**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

FEED MANAGEMENT SYSTEMS, INC,
a Minnesota corporation,

        Plaintiff,


v.                         **MEMORANDUM OF LAW & ORDER**
                                 Civil File No. 06-4126 (MJD/SRN)


ROBERT J. BRILL; BRILLIANT
ALTERNATIVES, INC., a Georgia
corporation; KETRON OPTIMIZATION
LLC, a Georgia limited liability company;
and THE BIONETICS CORPORATION,
a Virginia corporation;

        Defendants.

_____

C.J. Schoenwetter, David S. Miller, and Richard G. Morgan, Bowman & Brooke
LLP, Counsel for Plaintiff.

Daniel I. MacIntyre, Shapiro Fussell, and Manly A. Zimmerman, Zimmerman &
Bix Ltd., Counsel for Defendants.

_____

## I.   INTRODUCTION

    This matter is before the Court on Plaintiff Feed Management Systems,

Inc.'s Motion for a Temporary Restraining Order [Docket No. 4] and Defendants'

Motion to Dismiss or, in the Alternative, Motion to Transfer Venue [Docket No.

11].  The Court heard oral argument on November 9, 2006.

## II.    FACTUAL BACKGROUND

Plaintiff Feed Management Systems, Inc. ("FMS") is a computer software developer and vendor in the agribusiness arena.  It provides customers with the BRILL Products, which manage animal feed.  Richard P. Reynertson is FMS's CEO.

FMS and Defendant Brilliant Alternatives, Inc. ("BAI") are parties to the Amended Technology License and Transfer Agreement and the Amended Distribution Agreement, both dated May 18, 1999.  Under the Amended Distribution Agreement, BAI is entitled to distribute BRILL Products throughout the world but not in North and South America and Australia.

Defendant The Bionetics Corporation ("Bionetics"), through its Ketron division, developed optimization software programs called "C-WHIZ/pc" and "MPIII, Mixed Integer Optimizer."  These programs are imbedded into the BRILL Products.  FMS is also party to a contract with the Ketron division of Bionetics entitled "Consulting and Software Support Agreement," dated June 1, 1998.  Under this agreement, Bionetics provides technical assistance for the BRILL Products.  The Consulting and Software Support Agreement states:

> This Agreement shall commence on the date above and continue for two (2) years from that date and is automatically renewed for one-year increments thereafter subject to either party exercising its right of termination on thirty (30) days written notice.

(Consulting & Software Support Agreement ¶ 2.)

It also provides:

> No verbal agreement with any officer, agent, or employee of either party, either before or after the execution of this Agreement shall effect or modify any of the terms or obligations herein contained. No changes, alterations, or modifications of this Agreement shall be effective unless in writing and signed by legally authorized representatives of the parties hereto.

(Id. ¶ 9.)

During the fall of 2006, Defendant Ketron Optimization LLC ("Ketron") purchased substantially all of the assets of the Ketron division of Bionetics. On October 9, 2006, after a breakdown in price negotiations between FMS and Ketron, Ketron issued a notice of termination of the Consulting and Software Support Agreement. The termination will be effective on November 11, 2006.

On October 12, 2006, FMS filed a Complaint against Defendants Brill, BAI, Ketron, and Bionetics in this Court. On November 6, FMS filed an Amended Complaint and this Motion for a Temporary Restraining Order. Defendants have filed Motion to Dismiss or, in the Alternative, Motion to Transfer Venue.

## III.   DISCUSSION

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants move to dismiss the case for lack of subject matter jurisdiction. Defendants have submitted no affidavits, exhibits, or other evidence in support of their motion, and FMS has submitted no written response. Moreover, neither party addressed this issue at oral argument. At this stage in the litigation, on the

limited record before the Court, the Court denies the motion to dismiss for lack of subject matter jurisdiction without prejudice.

### 1.     Standard

This matter is before the Court on diversity jurisdiction.  Defendants claim that there is no more than $75,000 in controversy, exclusive of interest and costs, because the language of the parties' contracts demonstrates that Defendants have not breached those contracts.

The "party asserting federal jurisdiction . . . has the burden of establishing that the required amount is in controversy."  Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 814 (8th Cir. 1969).  When a party challenges the existence of federal jurisdiction due to the amount in controversy, the party asserting federal jurisdiction must only satisfy a "preponderance of the evidence" burden.  Kopp v. Kopp, 280 F.3d 883, 884-85 (8th Cir. 2002).

The Court concludes that, construing FMS's Amended Complaint liberally, on the limited evidence before it, the amount in controversy requirement for diversity jurisdiction has been met.  In its Amended Complaint, FMS alleges that BAI has breached its contract, resulting in loss of $500,000.  FMS has also asserted that actions by Ketron, Bionetics, and Brill will cause FMS to lose customers in a line of business that brings in well over $75,000 in revenue.

### B.     Motion to Dismiss for Lack of Personal Jurisdiction

Defendants also assert that this case should be dismissed because the Court lacks personal jurisdiction over all Defendants.  Defendants have submitted no affidavits, exhibits, or other evidence in support of their motion, and FMS has submitted no written response.  At this stage in the litigation, on the limited record before the Court, the Court denies the motion to dismiss for lack of personal jurisdiction without prejudice.

### 1.      Standard

While the plaintiff eventually bears the burden to establish personal jurisdiction by preponderance of the evidence, when personal jurisdiction is decided based upon affidavits, prior to an evidentiary hearing, the plaintiff need only establish a prima facie showing of personal jurisdiction.  <u>Dakota Indus., Inc. v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1387 (8th Cir. 1991).  "[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party."  <u>Id.</u> (citations omitted).

In order to establish jurisdiction, the requirements of both the forum state's long-arm statute and the federal due process clause must be met.  <u>Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.</u>, 950 F.2d 526, 528 (8th Cir. 1991).  As applied in this case, the Minnesota long-arm statute extends jurisdiction to the fullest extent permitted by the due process clause.  <u>Id.</u>; Minn. Stat. § 543.19.  Thus, the Court need only determine whether the due process clause allows personal jurisdiction in this case.

The Eighth Circuit has explained:

> The due process clause requires there be minimum contacts between the defendant and the forum state before the forum state may exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Id. at 528-29 (citations omitted).

In order to determine whether the exercise of jurisdiction comports with due process, the Court examines five factors:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Id. at 529 (citation omitted).

### 2.   Brill and BAI

On the limited record before the Court at this time, the Court concludes that it has personal jurisdiction over Brill and BAI. FMS alleges that Brill, representing BAI, has personally traveled to Minnesota to conduct sales presentations in violation of the Amended Distribution Agreement. This action by Brill and BAI forms the basis of FMS's contract claim against BAI. FMS also alleges that Brill has been heavily involved in the negotiation and execution of all

of the contracts at issue in this case with FMS, a Minnesota corporation, and has

made assurances to FMS, upon which FMS has relied.  FMS asserts that Brill's

actions have tortiously interfered with FMS's contract with Bionetics.  These

contacts with Minnesota form the basis for FMS's Amended Complaint.  FMS also

claims that Brills' and BAI's actions have caused harm to FMS in Minnesota.

Minnesota has an interest in providing a convenient forum for redressing

injuries inflicted by out-of-state actors on its corporations and their shareholders.

Marquette Nat'l Bank of Minneapolis v. Norris, 270 N.W.2d 290, 295 (Minn.

1978).  Finally, the convenience of the parties favors exercising jurisdiction.

While Brill and BAI may face inconvenience by traveling to Minnesota, this is

similar to the inconvenience that FMS will face traveling to some other forum to

conduct this lawsuit.  The Court concludes that it has personal jurisdiction over

Brill and BAI.

### 3.   Ketron and Bionetics

Defendants assert that Ketron was recently created during the fall of 2006;

thus, Ketron could not have had any contacts with Minnesota prior to its

inception.  Defendants assert that the only contract existing between Bionetics

and FMS contemplates that Bionetics will perform services in its own facility in

Virginia or at customer facilities anywhere in the world, not in Minnesota.

Furthermore, they assert that Ketron's and Bionetics' witnesses are based outside

of Minnesota.

FMS asserts that Ketron is the successor in interest to Bionetics, which entered into contracts with FMS, a Minnesota corporation, that would be performed by FMS in Minnesota.  Bionetics and then Ketron have continued to negotiate with FMS regarding these contracts, and FMS alleges that Ketron's action of terminating the Consulting and Software Support Agreement will cause harm to FMS in Minnesota.  These actions form the basis of FMS's claims against Bionetics and Ketron.

As previously noted, Minnesota has an interest in providing a convenient forum for redressing injuries inflicted by out-of-state actors on its corporations. The inconvenience faced by Ketron and Bionetics traveling to Minnesota for this litigation is equivalent to the inconvenience faced by FMS if it were forced to conduct this lawsuit in another forum.  Based on the limited record before it, the Court concludes that it has personal jurisdiction over Ketron and Bionetics.

### C.    Motion to Dismiss for Failure to State a Claim

Defendants seek to dismiss the claims against Brill for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Defendants allege that Brill has been sued in his individual capacity but there is no allegation in the Amended Complaint that any of the actions Brill took during the parties' relationship was anything other than as a representative, officer, or member of one of the other named Defendants.

FMS has not submitted any response to this motion, and neither party addressed this issue at oral argument.  However, FMS's Amended Complaint does allege that Brill committed the tort of tortious interference.  On the limited record before the Court at this time, the Court denies Defendants' motion without prejudice.

### D.    Motion to Transfer Venue

Defendants move to dismiss or transfer venue to the Eastern District of Virginia.  They argue that even if venue is technically correct under 28 U.S.C. § 1391, transfer should be granted because personal jurisdiction is lacking or, in the interest of justice, should not be exercised over Defendants.  They claim that most of the events that form the basis of the Amended Complaint occurred outside of Minnesota.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997) (citation omitted).

Neither party addressed this issue at oral argument, and FMS has not submitted any response to this motion.  Defendants have submitted no affidavits,

exhibits, or other evidence regarding this issue.  At this stage in the litigation,

Defendants have failed to meet their burden that transfer is warranted.  On the

limited record before the Court, the Court denies Defendants' motion to transfer

without prejudice.

### E.    Motion for Temporary Restraining Order

FMS seeks a temporary restraining order against Ketron and Bionetics

preventing them from terminating the Consulting and Software Support

Agreement on November 11, 2006.  FMS also seeks a temporary restraining order

enjoining BAI from violating the territorial restrictions contained in the Amended

Distribution Agreement.

#### 1.    Standard

The Eighth Circuit Court of Appeals has established the standard for

considering preliminary injunctions and temporary restraining orders.  <u>Dataphase

Sys. Inc. v. CL Sys., Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1981) (<u>en banc</u>).  This Court

must consider (1) the threat of irreparable harm to the moving party if an

injunction is not granted, (2) the harm suffered by the moving party if injunctive

relief is denied as compared to the effect on the non-moving party if the relief is

granted, (3) the public interest, and (4) the probability that the moving party will

succeed on the merits.  <u>Id.</u>

#### 2.    Consulting and Software Support Agreement

##### a.    Success on the Merits

In its motion, FMS asserts claims of promissory estoppel and equitable

estoppel against Bionetics and Ketron.

The application of promissory estoppel requires the analysis of three
elements:

1. Was there a clear and definite promise?

2. Did the promisor intend to induce reliance, and did such reliance
occur?

3. Must the promise be enforced to prevent an injustice?

Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995) (citation

omitted).

The Court finds that FMS is unlikely to succeed on its claim of promissory

estoppel because "the doctrine of promissory estoppel only applies where no

contract exists." Banbury v. Omnitrition Int'l, Inc., 533 N.W.2d 876, 881 (Minn.

Ct. App. 1995) (citations omitted).  In fact, "claims for breach of contract and

promissory estoppel are mutually exclusive as matter of law." Id. (citing UFE Inc.

v. Methode Elecs., Inc., 808 F. Supp. 1407, 1414-15 (D. Minn. 1992)).  FMS has

made no allegation that the Consulting and Software Support Agreement is

invalid.  In their arguments, the parties assume that the Agreement governs their

relationship.  Thus, FMS is unlikely to succeed on its claim for promissory

estoppel.

Similarly, the Court concludes that FMS has not demonstrated a likelihood

of success on the merits of its equitable estoppel claim.  "A party seeking to invoke

the doctrine of equitable estoppel has the burden of proving three elements: (1)
that promises or inducements were made; (2) that it reasonably relied upon the
promises; and, (3) that it will be harmed if estoppel is not applied." <u>Hydra-Mac,
Inc. v. Onan Corp.</u>, 450 N.W.2d 913, 919 (Minn. 1990) (citation omitted).  In
order to succeed on a claim of equitable estoppel, FMS must show that its reliance
on representations by Bionetics or Ketron was "reasonable." <u>Id.</u>  <u>See also</u>
<u>Tuomala v. Regent Univ.</u>, 477 S.E.2d 501, 506 (Va. 1996) ("To establish a claim
of equitable estoppel, without proving fraud, the complainant must show that he
reasonably relied on the representations and conduct of the defendant, such that
he changed his position to his detriment.") (citation omitted).

In light of the explicit terms of the Consulting and Software Support
Agreement, FMS's reliance on statements by Robert Brill, Tom Dehne, and Joe
Creegan would not be reasonable unless the assurances were "in writing and
signed by legally authorized representatives of the parties."

Brill may be a legally authorized representative of Bionetics and Ketron, but
Brill's statement to which FMS refers does not state that the Consulting and
Software Support Agreement will continue for another year, altering the thirty-
day termination provision.  It merely states that, as of September 8, 2006, nothing
had changed.  FMS has not met its burden to show that it reasonably relied on
this statement to believe that the agreement would <u>remain</u> unchanged until
September 27, 2007.

As to the statements by Dehne and Creegan, FMS has not met its burden of showing that either person was a "legally authorized representative[]" of Bionetics or of Ketron.

### b.      Irreparable Harm

Because FMS has "failed to demonstrate a probability of ultimate success, the possibility that it will suffer any harm from [the challenged activity] is highly speculative." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1184 (8th Cir. 1998). This factor weighs against granting a temporary restraining order.

### c.      Balance of the Harms

The Court concludes that the balance of the harms weighs against granting a temporary restraining order. FMS is unlikely to succeed on its claims of promissory or equitable estoppel, so the denial of its motion is unlikely to cause it harm. On the other hand, if the temporary restraining order is granted, Ketron and Bionetics will be prevented from exercising their contract rights and Ketron may face the destruction of its business.

### d.      Public Interest

The Court concludes that the public interest weighs against granting the temporary restraining order because there is a strong public interest in enforcing valid contracts. Cherne Indus., Inc. v. Grounds & Assocs., Inc., 278 N.W.2d 81, 94 (Minn. 1979).

Weighing all of the above factors, the Court concludes that a temporary restraining order is not warranted against Ketron or Bionetics.

### 3.   Territorial Restrictions in Amended Distribution Agreement

#### a.   Success on the Merits

FMS asserts that BAI has breached Paragraph 5.6 of the Amended Distribution Agreement by making sales presentations in the United States. FMS presents evidence that BAI did make sales presentations within North America and that the Amended Distribution Agreement bars BAI from selling certain products within the United States. However, the Amended Distribution Agreement does not bar BAI from selling all products within North America. FMS has failed to demonstrate that the products marketed by BAI within the United States are covered by the Amended Distribution Agreement. Furthermore, FMS presents no evidence of customer confusion beyond an anonymous hearsay statement recounted in Reynertson's Affidavit. The Court concludes that FMS has not demonstrated a likelihood of success on the merits of its claim that BAI has committed breach of contract.

#### b.   Irreparable Harm

Because FMS has "failed to demonstrate a probability of ultimate success, the possibility that it will suffer any harm from [the challenged activity] is highly speculative." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1184 (8th Cir. 1998). This factor weighs against granting a temporary restraining order.

**c.      Balance of the Harms**

The balance of the harms does not favor issuing a temporary restraining order.  FMS has not shown that BAI has breached its contract, so the denial of the temporary restraining order is not likely to result in harm to FMS.  On the other hand, if the temporary restraining order is granted, BAI will be prohibited from validly competing for clients and pursuing its business.

**d.      Public Interest**

 Finally, the Court concludes that the public interest weighs in favor of denying injunctive relief because public interest favors competition.  Guidant Sales Corp. v. George, No. Civ. 01-1638, 2001 WL 1491317, at *8 (D. Minn. Nov. 19, 2001) (unpublished).

Having weighed the above factors, the Court determines that issuance of a temporary restraining order against BAI is not warranted.

According, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Plaintiff Feed Management Systems, Inc.'s Motion for a Temporary Restraining Order [Docket No. 4] is **DENIED**.

2.      Defendants' Motion to Dismiss or, in the Alternative, Motion to Transfer Venue [Docket No. 11] is **DENIED** without prejudice.


Dated:  November 9, 2006                          s / Michael J. Davis
                                                                  Judge Michael J. Davis
                                                                  United States District Court