UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Feed Management Systems, Inc.,

    Plaintiff,

v.                                MEMORANDUM OPINION
                                    AND ORDER
                                    Civil No. 06-4126 (MJD/SRN)

Robert J. Brill, Brilliant
Alternatives, Inc; a Georgia
corporation; Ketron Optimization
LLC, a Georgia limited
liability company, and The
Bionetics Corporation, a
Virginia corporation,

    Defendants.

_____

    Richard G. Morgan, Steven L. Reitenour and Roseann J. Bour, Bowman and Brook LLP for and on behalf of Plaintiff.

    Daniel I. MacIntyre and Samuel T. Brannan, Page Perry, LLC, Manly A. Zimmerman, Zimmerman & Bix Ltd., for and on behalf of Defendants.

_____

    This matter is before the Court upon Defendants' (collectively referred to herein as "BAI") motion for a preliminary injunction.

Background

    Plaintiff Feed Management Systems, Inc. ("FMS") is a computer software

1

developer and vendor in the agribusiness arena.  It provides customers with the BRILL Products, which manage animal feed.

Easy Systems, Inc. n/k/a FMS and Brilliant Corporation, n/k/a Brilliant Alternatives, Inc. entered into an Asset Purchase Agreement, Amended Technology License and Transfer Agreement, and Amended Distribution Agreement on May 18, 1999.  BAI Exs. A, B; FMS Ex. 1.  Pursuant to these agreements, FMS purchased assets and technology from BAI concerning software and related products for the feed and pet industry.  Under the Amended Distribution Agreement, BAI is entitled to distribute BRILL Products throughout the world but not in North and South America and Australia.

In March 2001, FMS filed for bankruptcy protection under Chapter 11.  Most of the terms of the Asset Purchase Agreement were abrogated, but the Amended Technology License and Transfer Agreement and the Amended Distribution Agreement were assumed by FMS as part of the bankruptcy plan.  FMS also executed a secured recourse promissory note in favor of BAI.  FMS emerged from bankruptcy in 2002, and paid off the promissory note.  At that time, FMS acquired all rights to the intellectual property related to the Brill software.

The basis for this motion is that BAI was notified of FMS' intent to terminate the Amended Distribution Agreement as of December 31, 2007, and that injunctive relief is necessary because FMS does not have a proper basis to terminate this agreement.

BAI alleges that on December 4, 2007, FMS turned off BAI's access to its Partner Website - from which BAI and its subdistributors get news and updates for FMS Products and Derivative Products.  BAI Ex. E.  BAI was also informed on December 4, 2007 that FMS was to release a new product, Brill 2.0, and that only distributors that have been trained on this product would have access to the new systems and documentation.  Id.  It is BAI's assertion that the Amended Distribution Agreement does not give FMS the authority to impose training requirements for access to the Partner Website.

On December 5, 2007, FMS sent BAI a letter demanding that BAI use its trademarks pursuant to the Licensing Agreement.  BAI Ex. M.  BAI asserts FMS does not have the right to compel it to use the trademarks in a manner different from how they have been using the marks for the last six years, and that BAI seeks declaratory relief as to this very issue in its counterclaim.  BAI asserts it has nonetheless taken steps to comply with FMS' trademark guidelines by changing

its websites.

On December 12, 2007, Richard Reynertson, President of FMS, sent an email to Robert Brill, in which he addresses issues relative to the Brill 2.0 product. BAI Ex. F.  In this email, he indicates that it is FMS' belief that BAI is distributing product in FMS' territory.  Id.  At the end of this email, Reynertson sets forth a proposed solution to the parties' issues.  In response, Brill accuses Reynertson of being a terrorist.  Id.

On December 15, 2007, BAI received 30 days notice of termination from FMS of FMS's belief that BAI was in material breach of the distribution agreement by distributing products into FMS' territory.  BAI Ex. H.  BAI responded by denying FMS' contention, and asked that FMS forward any evidence of such distribution to BAI immediately.  Id.  Believing the Amended Distribution Agreement was set to terminate on January 14, 2008, BAI brought this motion on December 28, 2007.  On December 31, 2007, BAI's Steve Duke received an email informing him that BAI's access to FMS software was terminated, effective immediately.

By its motion, BAI seeks an order restraining and enjoining FMS from denying or restricting access to and the ability to download for distribution any

product or derivative product subject to the Amended Distribution Agreement. BAI also seeks to enjoin FMS from marketing FMS products and derivative products in BAI's territory. Finally, BAI seeks to enjoin FMS from terminating the Amended Distribution Agreement.

In response to BAI's motion for injunctive relief, FMS asserts that as early as January 2004, BAI was improperly using FMS' trademarks. Specifically, in a letter dated January 28, 2004 FMS notified BAI of its determination that BAI was using the marks "without explicit disclaimers and reference to FMS' rights", and that such use was "confusing to customers and potential customers." FMS Ex. 2. In another letter sent in August 2004, FMS again notified BAI of its belief that BAI was using its trademarks improperly. BAI Ex. C. BAI responded in a letter dated August 20, 2004, acknowledging FMS' right to regulate the use of the marks, but noting that "Brilliant Alternatives has never had any formal or informal instruction on how FMS would like to have the marks used and how they would not." FMS Ex. 3.

FMS asserts another letter was sent in March 2006 concerning BAI's use of its marks. FMS Ex. 4. This letter included guidelines as to the use of the marks at issue, such as requiring that BAI "always clearly indicate to its customers that (1)

5

FMS is the owner of the trademarks relating to the Products, (2) FMS is the owner of and sole authorized source for the Products, and (3) BIA's role is that of a distributor." Id. Thereafter, FMS sent BAI a series of trademark usage standards. BAI Ex. K.

In a letter dated October 26, 2007, FMS notified BAI of its belief that BAI continued to improperly use its trademarks, and put BAI on notice that if BAI failed to comply with FMS' demands, FMS would terminate the Distribution Agreement after 30 days. BAI Ex. L.

BAI filed its Defenses, Answer and Counterclaims to FMS' Counterclaims Against Brilliant Alternatives on November 13, 2007. FMS asserts that for the very first time in that pleading, BAI claimed that "FMS had abandoned all ownership rights in the Brill marks, and the Brill marks have become [sic] public domain." [Doc. No. 66, p.4]. BAI further claimed that there was a genuine dispute between the parties as to FMS's rights in the Brill marks. Id. p. 8.

Standard

The Eighth Circuit has established the following analysis to be used in considering a request for preliminary injunctive relief:

> [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Dataphase Sys., Inc. v. C. L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981); accord Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1090 (D. Minn. 1981), aff'd, 684 F.2d 565 (8th Cir. 1982).

In its initial memorandum filed in support of its motion, BAI made no effort to demonstrate that the Dataphase factors favored the requested injunctive relief. Instead, BAI argued it is subject to an immediate threat, and that FMS has no basis under the Amended Distribution Agreement to terminate said Agreement. In its reply memorandum, BAI argues it will suffer irreparable harm if FMS is allowed to terminate the Amended Distribution Agreement because said termination will impede BAI's ability to perform as a distributor, and will be unable to service its existing and potential customers for those products. BIA Reply Brief, p. 5. BAI further argues it has demonstrated irreparable harm because it cannot prove or know "how many sales it would have made if it had the ability to deliver Brill Products and Derivative Products." Id. p. 6.

To be entitled to injunctive relief, BAI must demonstrate irreparable injury. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citation omitted) (failure to show irreparable harm is an independent basis upon which to deny a preliminary injunction.) "When there is an adequate remedy at law, a preliminary injunction is not appropriate." Watkins, 346 F.3d at 844. The law is clear in this circuit that termination of a distribution agreement does not establish irreparable injury. See eg., Modern Computer Systems, Inc. v. Modern Banking Systems, Inc., 871 F.2d 734, 738 (8th Cir. 1989) (termination of distributor agreement did not establish irreparable harm); MacDonald v. Hopps, Civ. No. 03-6445, 2004 WL 114940 (D. Minn. Jan. 13, 2004) (adequate remedy at law for alleged violation of distributor agreement); Best Vendors Co. v. Win Stuff, LLC, Civ. No. 00-523, 2000 WL 34240391 at *2-3 (D. Minn. Mar. 13, 2000) (same).

In its reply memorandum, BAI cites to a number of Minnesota state court decisions addressing requests for injunctive relief. Those cases are not controlling here. Furthermore, in order to obtain injunctive relief in Minnesota state court, it is not necessary to demonstrate irreparable harm. See Dahlberg Brothers, Inc. v. Ford Motor Co., 272 Minn. 264, 137 N.W.2d 314, 321 (1965) See also, Lano Equip., Inc. v. Clark Equip. Co., Inc., 399 N.W.2d 694, 697 (Minn. Ct.

App. 1987). By contrast, the Eighth Circuit has clearly held that a showing of irreparable harm is necessary to be entitled to preliminary injunctive relief. Watkins, 346 F.3d at 844.

BAI has also cited cases from other jurisdictions, but none of those cases lend support for the requested injunctive relief. For example, BAI cites to Petereit v. S.B. Thomas, Inc., 63 F.3d 1169 (2nd Cir. 1995). Petereit stands for the proposition that an injunction may be appropriate where the very of existence of business is threatened by the alleged wrongful conduct. Id. at 1197 (citing cases). In this case, however, BAI has not submitted any evidence, by way of affidavit or otherwise, that the existence of BAI's business is threatened if FMS terminates the Amended Distribution Agreement.[1] In fact, the record suggests that BAI markets and distributes other products not subject to the Amended Distribution Agreement.

Because BAI has not demonstrated that it will suffer irreparable injury, the motion for injunctive relief must be denied.

---

[1]The ABA Distributors, Inc. v. Adolph Coors Co., 542 F. Supp. 1272 (D. Mo. 1982) is distinguishable because it involved a franchise relationship. No franchise is alleged here. The case of Dairy King, Inc. v. Kraft, Inc., 665 F. Supp. 1181 (D. Md. 1987) is also factually distinguishable because movant "uniquely depended" on line of product at issue. Again, there is no evidence of such reliance on FMS products in this case.

The Court further finds that the remaining <u>Dataphase</u> factors do not weigh in favor of the requested injunctive relief. BAI has not demonstrated a likelihood of success on the merits. Section 6.1 of the Amended Distribution Agreement provides that BAI shall use FMS's trademarks "in accordance with [FMS]' standards, specifications and instructions." Section 4.2(f) of the Amended Distribution Agreement provides that said Agreement may be terminated upon the occurrence of the following "Breach by either party of any material obligation required of it under this agreement . . . and the continuation of such breach for a period of thirty days after notice."

Both parties have submitted evidence which suggests that BAI was not complying with FMS' standards, specifications and instructions concerning the marks at issue. <u>See</u> FMS Ex. 2 (January 2004 letter to BAI addressing BAI's misuse of FMS's trademarks); FMS Ex. 3 (August 2004 letter to FMS acknowledging FMS' ownership of the marks at issue, and FMS' right to regulate their use, and asking FMS for protocols in that regard); BAI Ex. L (October 26, 2007 letter to BAI detailing BAI's alleged infringement of FMS' trademark rights, and giving notice of termination if compliance not achieved within 30 days); BAI Ex. M (December 2007 letter to BAI following up October 2007 letter, and

informing BAI of FMS' determination that BAI did not use FMS' marks in compliance with FMS' standards, specification and instructions.)

Other than arguing that FMS cannot unilaterally terminate the contract because issues involving the trademarks at issue are currently part of this litigation, BAI has not provided any authority or evidence demonstrating that FMS is in breach of the Amended Distribution Agreement. Accordingly, the Court finds that BAI has not demonstrated that it will likely succeed on the merits.

Given the fact that BAI has not demonstrated irreparable harm, or a likelihood to succeed on the merits, the remaining factors, balance of harms and public policy, weigh against the requested injunctive relief.

IT IS HEREBY ORDERED that Defendants' Motion for a Preliminary Injunction [Doc. No. 74] is DENIED.

Date: January 8, 2008

s / Michael J. Davis<br>
Michael J. Davis<br>
United States District Court